# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| ERIN ANGELO, NICHOLAS ANGELO, AND CYNTHIA WILSON, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:20-cv-00484-RP |
| CENTENE MANAGEMENT COMPANY, LLC, CELTIC INSURANCE COMPANY, SUPERIOR HEALTHPLAN, INC., and CENTENE COMPANY OF TEXAS, L.P., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................1

    A.    The Affordable Care Act ...........................................................................1

    B.    Centene Is A Major National Health Insurance Provider That Sells Its Ambetter Health Insurance Policy on the Texas Insurance Exchange. ..................3

    C.    Health Care Provider Directories Are Required by Law to be Accurate................4

    D.    Plaintiffs Were Damaged By Centene's Inaccurate Network.................................4

    E.    The Ambetter Health Care Provider Directory Has Been Inaccurate Since Its Inception and Has Caused Policyholders to Pay Inflated Premiums. ................6

III.    LEGAL STANDARD.............................................................................................6

IV.    ARGUMENT .........................................................................................................7

    A.    Plaintiffs Satisfy the Prerequisites for Class Certification........................7

        1.    Plaintiffs and the Class Have Article III Standing......................7

        2.    The Class is Ascertainable. ...........................................................8

    B.    The Class is Sufficiently Numerous under Rule 23(a)(1)........................9

    C.    There are Common Legal and Factual Questions Capable of Classwide Resolution Under Rule 23(a)(2)..............................................................9

    D.    Plaintiffs' Claim is Typical Under Rule 23(a)(3) .................................10

    E.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Under Rule 23(a)(4) .............................................................................12

V.    CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3) .................................13

    A.    Common Questions of Law and Fact Predominate ...............................14

    B.    A Class Action is the Superior Method to Proceed ..............................17

VI.    THE COURT SHOULD APPOINT WATTS GUERRA, LLP AND CERA LLP AS CLASS COUNSEL.........................................................................................19

VII.    CONCLUSION ...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Cases

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
    690 F.3d 698, (5th Cir. 2012) .................................................................................. 10

*Almon v. Conduent Business Services, LLC*,
    No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. 2022) ................................. 8

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................... 6, 12, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) .................................................................................................. 15

*Angelo v. Centene Management Company, LLC*,
    1:20-cv-0484, 2021 WL 352434 (W.D. Tex. Feb. 2, 2021) ...................................... 16

*Bell Atlantic Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ............................................................................. 11, 14

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) .................................................................................... 12

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ................................................................................. 7, 18

*Chavez v. Plan Benefit Servs., Inc.*,
    957 F3d. 542 (5th Cir. 2020) ...................................................................................... 7

*Cleven v. Mid-America Apartment Communities, Inc.*,
    20 F.4th 171 (5th Cir. 2021) ...................................................................................... 7

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) ............................................................................. 10, 15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .................................................................................................. 14

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) .................................................................................... 12

*Fleming v. Travenol Laboratories, Inc.*,
    707 F.2d 829 (5th Cir. 1983) ...................................................................................... 9

*Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*,
    695 F.3d 330 (5th Cir. 2012) .................................................................................... 14

*Ibe v. Jones*,
    836 F.3d 516 (5th Cir. 2016) .................................................................................... 12

*In re Deepwater Horizon*,
    739 F.3d. 790 (5th Cir. 2014) ........................................................................... 7

*In re Dell Inc.*,
    No. 06–726, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ....................................... 17

*In re TWL Corp.*,
    712 F.3d 886 (5th Cir. 2013) ........................................................................... 9

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ........................................................................... 11

*Jenkins v. Raymark Indus., Inc.*,
    782 F.2d 468 (5th Cir. 1986) ................................................................ 9, 11, 13

*John v. National Sec. Fire and Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ........................................................................... 8

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (1997) ...................................................................................... 18

*Maldonado v. Ochsner Clinic Foundation*,
    493 F.3d 521 (5th Cir. 2007) ........................................................................... 17

*Mitchell v. State Farm Fire & Casualty Company*,
    954 F.3d 700 (5th Cir. 2020) ........................................................................... 14

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ........................................................................... 9

*Norwood v. Raytheon Co.*,
    237 F.R.D. 581 (W.D. Tex. 2006) ..................................................................... 18

*Pederson v. Louisiana State University*,
    213 F.3d 858 (5th Cir. 2000) ........................................................................... 9

*Robinson v. Texas Auto. Dealers Ass'n*,
    387 F.3d 416 (5th Cir. 2004) ........................................................................... 17

*Sandwich Chef of Texas, Inc. v. Reliance Nat'l Ins. Indem. Co.*,
    319 F.3d 205 (5th Cir. 2003) ........................................................................... 14

*Seeligson v. Devon Energy Prod. Co., L.P.*,
    761 F. App'x 329 (5th Cir. 2019) ...................................................................... 8

*Slade v. Progressive*,
    856 F.3d 408 (5th Cir. 2017) ........................................................................... 12

*Smith Intern., Inc. v. Egle Group, LLC*,
    490 F.3d 380 (5th Cir. 2007) ........................................................................... 15

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ................................................................. 11

*Torres v. S.G.E. Mgmt., L.L.C.*,
    838 F.3d 629 (5th Cir. 2016) ............................................................. 6, 13

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ......................................................................... 13, 14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2021) ............................................................. 8, 17

*Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*,
    51 S.W.3d 345 (Tex. App. 2001) ........................................................... 15

*Vine v. PLS Fin Servs., Inc.*,
    331 F.R.D. 325 (E.D. Tex. 2019) ............................................................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 10

*Zeidman v. J. Ray McDermott & Co., Inc.*,
    651 F.2d 1030 (5th Cir. 1981) ................................................................. 9

Statutes

42 U.S.C. §18001 ........................................................................................... 1

45 C.F.R. 156.230 .......................................................................................... 4

45 C.F.R. 156.230(a)(2) ................................................................................. 2

45 C.F.R. 156.230(b)(2) ................................................................................. 2

45 C.F.R. 156.230(d) ..................................................................................... 2

Rules

Federal Rules of Civil Procedure

    Rule 23 ...................................................................................... 1, 6, 7

    Rule 23(a) ......................................................................................... 6

    Rule 23(a)(1) .................................................................................... 9

    Rule 23(a)(2) .................................................................................... 9

    Rule 23(a)(3) .................................................................................. 10

    Rule 23(a)(4) .................................................................................. 12

    Rule 23(b)(3) ............................................................ 13, 14, 17, 18

Rule 23(b)(3)(D) ........................................................................................................................ 19

Rule 23(c)(2)(B) ........................................................................................................................ 19

Rule 23(g) .................................................................................................................................. 20

Rule 23(g)(1) .............................................................................................................................. 19

Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[1] and Local Rule CV-23, plaintiffs hereby move for class certification, for appointment of class representatives, and for appointment of class counsel.

## I.   <u>INTRODUCTION</u>

This is a class action on behalf of all individuals in the State of Texas who from January 1, 2014 through December 31, 2021 (the "Class Period") were insured for health care under the Ambetter insurance policy sold and managed by defendants.[2] Plaintiffs allege that the Centene policies were sold to all class members at inflated prices because the lists of providers represented to be available to Centene's insureds were materially inaccurate in that they contained thousands of names of providers who in fact were not available to provide medical care. As a result, the premiums paid by class members were artificially inflated. Ambetter policyholders were charged for access to providers who were not in fact available to them. This class action seeks to recover the overcharges that were paid by class members.

## II.   <u>FACTUAL BACKGROUND</u>

### A.   **The Affordable Care Act**

In March 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. §18001 *et seq.*, a legislative effort to extend health care coverage to nearly all Americans.

A central feature of the ACA is the requirement that each state have an online Exchange or Marketplace or use the Federal Exchange so that prospective policyholders can shop and

---

[1] All references hereafter to "Rule __" are to the Federal Rules of Civil Procedure.
[2] Defendants are Centene Management Company, LLC, Celtic Insurance Company, Superior Healthplan, Inc., and Centene Company Of Texas, L.P. ("Centene").

compare policies. If an insurance company's health insurance policy satisfies certain statutory and regulatory requirements, including publishing a defined and accurate network of participating health care providers ("in-network providers"), it can sell its health insurance policy on an Exchange as a Qualified Health Plan ("QHP"). 45 C.F.R. 156.230(b)(2); 45 C.F.R. 156.230(d).[3] Defendants' "Ambetter" policy is a QHP sold on the Texas Health Insurance Exchange.

Health insurance companies such as Centene are required to self-report their network data to the Center for Medicare and Medicaid Services ("CMS") and attest to the accuracy of this data as a condition for a plan to be certified for sale on an Exchange. 45 C.F.R. 156.230(a)(2). CMS utilizes the self-reported data to assess the adequacy of a plan's network in order to certify the plan for sale on an Exchange. Plaintiffs allege and will prove at trial that Centene has submitted and attested to data -- and made available to its insureds as a part of their contract -- provider lists that are materially inaccurate, causing the premiums paid by class members for defendants' Ambetter policy obtained on the Texas Exchange to be artificially inflated.

As explained by plaintiffs' expert witness, Dr. Simon F. Haeder, Ph.D., MPA, on average, the in-network Ambetter provider directories were at least fifty percent smaller than represented.[4] Claims data produced in discovery by defendants and analyzed by plaintiffs' expert reveals that the Centene provider network directory published for Ambetter policyholders in Texas contained on average 49% of listed practitioners who were not in fact active network

---

[3] "For plan years beginning on or after January 1, 2016, a QHP issuer must publish an up-to-date, accurate, and complete provider directory, including information on which providers are accepting new patients, . . . in a manner that is easily accessible to plan enrollees, prospective enrollees, the State, the Exchange, HHS and OPM." 45 C.F.R. 156.230(b)(2).

[4] *See* Expert Witness Report of Dr. Simon F. Haeder, Ph.D. ("Haeder Report") attached as Ex. A to the Declaration of Andres Pereira (the "Pereira Decl."), filed herewith. *See also* Pereira Dec. ¶12, Ex. F, Deposition Testimony of Michael Diel ("Diel Tr.") at 194:10-195:13.

participants over the Class Period, with an astounding monthly inaccuracy rate ranging from 39% to 68%. Because thousands of listed providers were not part of the active Ambetter provider network, Ambetter policyholders did not have access to the full scope of the health care they paid for.[5] Nonetheless, the sale of the materially inaccurate Centene Ambetter policies in Texas during the Class Period has generated revenues for Centene of more than $8 billion.[6]

### B. Centene Is A Major National Health Insurance Provider That Sells Its Ambetter Health Insurance Policy on the Texas Insurance Exchange.

Defendant Centene Corporation, incorporated in Delaware and headquartered in St. Louis, Missouri, is a multi-national health insurance conglomerate focusing on government-sponsored health insurance.[7] Its target customers are uninsured and underinsured individuals.[8] Centene does business in many states in the United States through local wholly-owned subsidiaries. In Texas, those subsidiaries are defendants Superior HealthPlan, Inc., Celtic Insurance Company, and Centene Management Corporation. Centene sells a health insurance policy known as "Ambetter" on the Texas Exchange.

The Ambetter policy is an Exclusive Provider Organization ("EPO") policy, which means that policyholders must use in-network health care providers in order to have their care covered

---

[5] As stated by Plaintiffs' expert, "The benefits purchased by Centene's consumers was substantially less than the benefit that was presented to them. That is, the economic value to be received was much lower than the value they in fact received. The reduction in value applies to every single consumer who purchased a health plan [Ambetter policy] from Centene." Pereira Decl. ¶7, Ex. A, Haeder Report at 56.

[6] Plaintiffs' expert has developed a methodology for measuring damages on a classwide basis. The damage calculation is the same for all Texas consumers who purchased an Ambetter policy during the Class Period and is a formula that is based on the degree of inaccuracy of the provider directory in each area in Texas where defendants sold Ambetter policies. The formula and the basis for its use are explained in detail in the accompanying expert report.
Pereira Decl. ¶7, Ex. A, Haeder Report at 56-58.

[7] Pereira Decl. ¶8, Ex. B, Centene 10-K.

[8] *Id.*

under the policy. Unlike a Health Maintenance Organization, EPO policyholders generally do not need a referral to see an in-network specialist but must use in-network health care providers in order to have their care covered. All Ambetter policies sold on the Texas Exchange use the same health care provider network directory.[9]

### C.      Health Care Provider Directories Are Required by Law to be Accurate.

In order to participate on an Exchange, insurers are required to maintain "a network that is sufficient in number and types of providers [to] ensure that all services will be accessible without unreasonable delay." 45 C.F.R. 156.230. The facts developed in this case show that defendants have consistently listed thousands of providers as "in-network" when established criteria make clear that their inclusion is erroneous.[10] Consequently, defendants' attestation that their network data is true and accurate has been false throughout the Class Period. The false network directories have served as an effective marketing tool for defendants as the presentation of a large list of providers misleadingly reassures potential policyholders that they will have no difficulty accessing medical care when needed.[11] Ambetter policyholders in Texas have as a result paid more in premiums than they should have because a portion of the premium is payment for access to providers on the published Ambetter provider directory.[12]

### D.      Plaintiffs Were Damaged By Centene's Inaccurate Network.

The named plaintiffs and proposed class representatives' contracts with defendants have been breached and damages incurred as a result of Centene's use of inaccurate provider lists. The

---

[9] Pereira Decl. ¶12, Ex. F, Diel Tr. at 51:1-6.
[10] Pereira Decl. ¶7, Ex. A, Haeder Report at 1.
[11] *See* Affidavits of plaintiffs Cynthia Wilson, Erin Angelo and Nicholas Angelo, filed herewith.
[12] Pereira Decl. ¶7, Ex. A, Haeder Report at 1.

breach of contract claim raises common legal and factual issues and is typical of the claim of all class members who purchased the Ambetter policy during the Class Period.

For example, Plaintiff Cynthia Wilson purchased an Ambetter policy on the Texas Exchange in November 2016.[13] As part of her policy search she reviewed the Ambetter directory of in-network health care providers.[14] On January 23, 2017, she was assigned a primary care provider by Superior Health and shortly thereafter learned that the assigned provider was not accepting Ambetter policies.[15] Plaintiff Wilson then contacted Superior Health and asked to be assigned a new primary care provider.[16] She was assigned to Dr. Hector Barrezuetta whom she later learned, when she needed medical care in November 2017, was a pediatrician.[17] Wilson then made frantic attempts to locate a physician who would accept her Ambetter policy, contacting nine additional doctors all of whom were listed in the Ambetter provider director and none of whom accepted the Ambetter policy.[18] Despite timely paying all the required premiums, plaintiff Wilson was never able to use her policy to see a health care provider.[19]

Plaintiffs Erin and Nicholas Angelo, husband and wife, are residents of Pflugerville, Texas.[20] They selected the Ambetter policy in December 2016 after reviewing the Ambetter provider directory and noting that Erin's high-risk obstetrician and maternal-fetal medicine specialist was listed in the directory.[21] Mrs. Angelo was pregnant with twins in a single amniotic

---

[13] Affidavit of Cynthia Wilson ¶3.
[14] *Id*.
[15] *Id*. at ¶4.
[16] *Id*. at ¶5.
[17] *Id*. at ¶¶5, 7.
[18] *Id*. at ¶8.
[19] *Id*. at ¶10.
[20] Affidavit of Erin Angelo ¶3.
[21] *Id*. at ¶¶ 3, 4.

sac, an extremely high-risk pregnancy.[22] Shortly thereafter, she learned that her obstetrician, even though listed in the Ambetter provider directory, was not in fact available to Ambetter policyholders such as herself.[23]

### E.   The Ambetter Health Care Provider Directory Has Been Inaccurate Since Its Inception and Has Caused Policyholders to Pay Inflated Premiums.

Throughout the State of Texas over the Class Period, the Ambetter provider directories were, on average, 49% inaccurate, and frequently much more.[24] In a remarkable moment of candor, a Centene representative conceded in deposition that at any given time about 50 percent of its listed providers are not actively seeing patients.[25]

The data produced by defendants in discovery has been analyzed in detail by plaintiffs' expert. He has set forth a straightforward damage formula developed and accepted by health care policy experts ("Formula"). According to the Formula, each percent increase in active network size corresponds to a 0.29% increase in premiums and vice versa.[26] This Formula may be applied to all class members to determine the damages they have sustained.

## III.   LEGAL STANDARD

In order to certify a class pursuant to Rule 23, a district court must find that the four threshold requirements of Rule 23(a) are met, and then establish that one of the three alternative grounds for certification applies -- here, subsection (b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997); *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016) (*en banc*) (citing Rule 23(a)).

---

[22] *Id*. at ¶3.
[23] *Id*. at ¶5.
[24] Pereira Decl. ¶7, Ex. A, Haeder Report at 8.
[25] Pereira Decl. ¶12, Ex. F, Diel Tr. at 194:25-195:13.
[26] Pereira Decl. ¶7, Ex. A, Haeder Report at 61.

"A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class, but [t]he decision to certify is within the broad discretion of the court as long as that discretion [is] exercised within the framework of rule 23." *Cleven v. Mid-America Apartment Communities, Inc.*, 20 F.4th 171, 176 (5th Cir. 2021) (internal quotations omitted) citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The district court, however, "may not require a plaintiff to establish his claims at the class certification stage." *Vine v. PLS Fin Servs., Inc.*, 331 F.R.D. 325, 330 (E.D. Tex. 2019) (citation omitted); *see also Chavez v. Plan Benefit Servs., Inc.*, 957 F3d. 542, 546 n.3 (5th Cir. 2020). As demonstrated herein, plaintiffs satisfy their burden under Rule 23 such that certification of the proposed class is warranted. Plaintiffs seek certification of the following class:

> All persons in the State of Texas who were insured by Defendants' Ambetter insurance product which was purchased through the ACA HIE from the date on which the Ambetter policies were first sold in Texas to December 31, 2021.

## IV.   ARGUMENT

### A.   Plaintiffs Satisfy the Prerequisites for Class Certification

#### 1.   Plaintiffs and the Class Have Article III Standing

Plaintiffs and members of the proposed Class have Article III standing. On a Rule 23 motion, the elements of Article III standing—injury in fact, traceability to the defendant's conduct, and redressability by the relief requested—are assessed based on the allegations in the pleadings. *In re Deepwater Horizon*, 739 F.3d. 790, 799, 802-804 (5th Cir. 2014).

Plaintiffs purchased Superior Health's Ambetter health insurance policy. *See* First Amended Complaint ¶¶1, 2; Nicholas Angelo Affidavit at ¶¶3, 9; Erin Angelo Affidavit at ¶¶3, 9; Cynthia Wilson Affidavit at ¶3. The lists of Centene providers for the Ambetter policy published on the ACA Marketplace in Texas are the same ones used by all policyholders in the state. *See* Haeder Report at 8. That is, there is only one network list provided to all Ambetter

Policyholders no matter where they live in Texas. *Id.* On a monthly basis, the Centene provider network directory published for Ambetter policyholders contains on average 49% of practitioners who are in fact not active network participants. *Id.* A portion of every Ambetter policyholders' premium represents payment for the availability of the providers published as the Ambetter provider network. *Id.* To the extent that published list is inaccurate, each policyholder has been overcharged. *Id.* The health economics literature has established a relationship between network size and overall premium. That is, the value of the benefit is proportional to the premium and it has been determined that every 1% change in network size is associated with a 0.29% change in policy premium. *Id.* Therefore, there is clear evidence of a formulaic classwide overcharge. Plaintiffs have standing.[27]

### 2.    The Class is Ascertainable.

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2021). This requires that there be "sufficient objective criteria from which to identify class members." *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019). Here, each and every consumer who purchased an ACA marketplace Ambetter plan from Centene in Texas can be identified from Centene's records.[28] *Almon v. Conduent Business Services, LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992, at *24 (W.D. Tex. 2022). The class is clearly ascertainable.

---

[27] "These damages are present for each and every consumer who purchased an ACA marketplace plan from Centene because Centene uses only a single provider directory and a single provider network to serve all its consumers." Pereira Decl. ¶7, Ex. A, Haeder Report at 1-2.
[28] *See* Pereira Decl. ¶12, Ex. F, Diel Tr. at 177:19-23.

### B.      The Class is Sufficiently Numerous under Rule 23(a)(1)

The requirement of numerosity is that the class be so numerous that joinder of all members individually would be impracticable. *See* Rule 23(a)(1); *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013). Although "the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has stated that a putative class of 100-150 members is "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). "To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'" *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (citing *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

Based on the data and documents produced by defendants, there are at least thousands of class members.[29] This evidence establishes numerosity beyond the "mere allegation that the class is too numerous to make joinder practicable." *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir. 1983). The requisite numerosity exists.

### C.      There are Common Legal and Factual Questions Capable of Classwide Resolution Under Rule 23(a)(2)

Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). "The threshold of 'commonality' is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). The claims "must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v.*

---

[29] Pereira Decl. ¶13, Ex. G, SW030835; *Id*. ¶14, Ex. H, SW029743; *Id*. ¶16, Ex. J, Deposition Testimony of Kenneth James ("James Tr.") at 103:3-19.

*Dukes*, 564 U.S. 338, 350 (2011); *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). The existence of even one common question of this nature satisfies Rule 23(a)(2); *see also Cleven v. Mid-America Apartment Communities, Inc.*, 20 F.4th 171, 179 (5th Cir. 2021) ("At this stage, the plaintiffs must show only that they raise a common question of law, not that the question will ultimately be decided in a way that is favorable to the proposed class's claim."). The Fifth Circuit has recognized that "cases involving form contracts are often prime candidates for class certification because of the common interpretive questions at stake." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020). Such is the case here.

The common questions of law or fact at issue here easily meet the commonality standard. Each class member was insured under an Ambetter insurance product that was purchased through the ACA HIE from the date on which the Ambetter policies were first sold in Texas to the present.[30] The contracts at issue all referred to the same network of providers.[31] The principal issue common to all members of the proposed class is whether Centene breached its contract with the plaintiffs and the class members by failing to accurately represent the network of health care providers purportedly available to treat Ambetter policyholders and overcharging policyholders as a result. These contentions clearly raise questions of law or fact common to the class.

### D.    Plaintiffs' Claim is Typical Under Rule 23(a)(3)

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class," thereby ensuring the named plaintiffs' litigation interests are the same as the other class members. Rule 23(a)(3). The typicality inquiry rests

---

[30] First Amended Complaint ¶¶1, 2; Pereira Dec. ¶9, Ex. C, Cynthia Wilson Affidavit at ¶3; *Id*. ¶ 10, Ex. D, Erin Angelo Affidavit at ¶¶3, 9; *Id*. ¶11, Ex. E, Nicholas Angelo Affidavit at ¶¶3, 9.
[31] *See* Pereira Decl. ¶7, Ex. A, Haeder Report at 1-2.

"less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims." *Jenkins*, 782 F.2d at 472. The Fifth Circuit has stated that:

> [T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representatives' claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

Plaintiffs' claims are typical of the class members' claims under the Fifth Circuit standard. They arise from the failure of the Centene Defendants to provide an accurate provider network. Plaintiffs, just like each class member, were insured by an Ambetter insurance policy purchased through the marketplace at healthcare.gov. Defendants advertised, promoted, and published the same online provider directory to plaintiffs and the class. Plaintiffs and all class members purchased a health insurance policy that included lists of providers from the network directory as advertised. However, nearly 50% of this directory included providers that were not accepting Ambetter patients. Therefore, plaintiffs and the class paid more for their health insurance than they should have. Plaintiffs' claim is typical of the claims of the class members.[32]

---

[32] Moreover, the Fifth Circuit has stated in *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003), "[e]ven wide disparity among class members as to the amount of damages" does not preclude class certification "and courts, therefore, have certified classes even in light of the need for individualized calculations of damages."

**E.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Under Rule 23(a)(4)**

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the class." Rule 23(a)(4); *see also, e.g., Amchem Prods.*, 521 U.S. at 625-26 (observing that "[a] class representative must ... 'possess the same interest and suffer the same injury' as the class members" (citations omitted)). This compels attention to "the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). To this end, the adequacy of class representation required under Rule 23(a)(4) mandates an inquiry not only into (1) the "zeal and competence of the representatives' counsel," but also into (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

Rule 23(a)(4) "requires the class representatives to possess a sufficient level of knowledge and understanding to be capable of controlling and prosecuting the litigation." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (citing *Berger*, 257 F.3d at 482-83). The "legal standard in determining the adequacy of the class representatives under rule 23 [is] whether the putative class representatives are 'willing' and 'able' to 'take an active role in and control the litigation to protect the interests of absentees.'" *Id.* at 479. The adequacy inquiry also encompasses whether there is a risk of conflicts of interest between named plaintiffs and the class they represent. *Slade*, 856 F.3d at 412.

Applying these standards, there is no antagonism of any kind between the interests of the plaintiffs and the members of the class. Plaintiffs share the same interests in prosecuting the claims as do all class members who paid premiums for an Ambetter policy during the Class

Period that were inflated due to the inaccuracy of the published provider network available to all Ambetter policyholders. Moreover, plaintiffs have actively participated in this case and their efforts have well served the interests of class members to this point.[33] Plaintiffs understand their obligations to the class and are ready, willing, and able to act as an effective advocate for members of the proposed class. There is nothing about plaintiffs' factual circumstances that create a conflict of any kind, let alone a fundamental one, with any absent class member. The plaintiffs takes their obligations seriously and have and will effectively represent the class.

## V.     CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and, . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). The requirements of the Rule 23(b)(3) are satisfied here. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). The overarching common question presented here -- whether defendants' provider lists were materially inaccurate causing premiums to be artificially inflated -- clearly predominate over any individual issues.

---

[33] The Centene Defendants elected not to conduct discovery and therefore the plaintiffs were not deposed. They file affidavits herewith in support of their adequacy as representatives of the class demonstrating their understanding of the case and commitment to represent the absent class members, control the litigation, and stay apprised of developments. *Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).

A.        **Common Questions of Law and Fact Predominate**

Predominance is satisfied when "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. (citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted). "The trial court must weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Mitchell v. State Farm Fire & Casualty Company*, 954 F.3d 700, 710 (5th Cir. 2020) (citation and internal quotation marks omitted). Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) also requires a court to consider "how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Ins. Indem. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). "This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately "prevents the class from degenerating into a series of individual trials." *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (internal quotations and citations omitted).

"Considering whether 'questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action." *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 348 (5th Cir. 2012) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be

14

considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 577 U.S. at 453 (internal citations and quotations omitted). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Each element of the claim asserted here presents common issues that predominate. "In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)).[34]

Plaintiffs' claim is capable of classwide treatment. At issue in this case is essentially a form contract containing a provider list. Each such list was inaccurate in the same way i.e. they misstated the available in-network providers. The key terms of the Ambetter contract at issue are the same for every level and for each year.[35] The Fifth Circuit has recognized that suits involving form contracts such as the one at issue here often lend themselves to class treatment. *Cruson v. Jackson National Life Insurance Company*, 954 F.3d 240, 255 (5th Cir. 2020).

Each of the class members entered into form contracts and paid an inflated premium for access to a network of providers which was inaccurate. Among the specific promises and

---

[34] In diversity jurisdiction cases, courts must apply the choice of law rules of the forum state, in this case Texas. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).
[35] Pereira Decl. ¶15, Ex. I.

obligations defendants made to plaintiffs in the Ambetter Contract in exchange for their premium payments was to provide an accurate list of network providers. *Angelo v. Centene Management Company, LLC*, 1:20-cv-0484, 2021 WL 352434, at *3 (W.D. Tex. Feb. 2, 2021).

Thus, the benefits received by Centene's insureds under its Ambetter policy were materially less than the benefits promised, as a result of the publication of materially inaccurate provider lists. Damages are present for each and every consumer who purchased an ACA marketplace plan from Centene because Centene uses only a single provider directory and a single provider network to serve all its insureds.[36] "A portion of every Ambetter policyholders' premium represents payment for availability of the providers published as the Ambetter provider network. To the extent that published list is inaccurate, each policyholder has been overcharged for their premium."[37] That the network at issue is common to all Ambetter policyholders has been confirmed by defendants' witnesses.[38] Superior Health represents to its policyholders that the network presented on the website is accurate.[39] Regardless of the level of policy (bronze, silver, or gold), the same policies and procedures apply equally to each level.[40]

The clear predominance of common issues here means that if this case is not resolved as a class action, each plaintiff would have to individually litigate. Each claimant would need to repetitively present factual evidence about the same inaccuracies in the provider network. Moreover, each individual plaintiff would need to use a formula to calculate damages similar to

---

[36] "The Centene provider network lists for its Ambetter policy published on the ACA Marketplace in Texas are the same ones used by all policyholders in the State of Texas. That is, there is only one network list provided to all Ambetter Policyholders no matter where they live." Pereira Decl. ¶7, Ex. A, Haeder Report at 8.
[37] *Id.*
[38] Pereira Decl. ¶12, Ex. F, Diel Tr. at 50:16-51:6.
[39] Pereira Decl. ¶16, Ex. J, James Tr. at 108:10-13.
[40] Pereira Decl. ¶12, Ex. F, Diel Tr. at 176:10-177:24.

that used by Dr. Haeder. In sum, separate individual litigation of these issues would "involve the same cast of characters, events, discovery, documents, fact witnesses, and experts." Relitigating these issues seriatim "would be a massive waste of judicial resources, as the vast majority of the issues of law and fact in this case ... are common to all the class members." *In re Dell Inc.*, No. 06–726, 2010 WL 2371834, at *4 (W.D. Tex. June 11, 2010), *aff'd*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012). Common questions clearly predominate over questions affecting only individual class members in this case. Rule 23(b)(3)'s predominance requirement is satisfied, thereby supporting class certification.

**B.      A Class Action is the Superior Method to Proceed**

Certification of Plaintiff's breach of contract claim is "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). Indeed, this is precisely the kind of case for which the class action procedure was created.

To determine superiority, the Court considers four non-exclusive factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (3) the difficulties likely to be encountered in the management of a class action. *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) (citing Fed. R. Civ. P. 23(b)(3)). "[T]he superiority analysis requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 525 (5th Cir. 2007) (internal quotations and citations omitted). The Fifth Circuit has established that the most compelling rationale for finding

superiority in a class action is the existence of a negative value suit. *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). As the Supreme Court noted:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (U.S. 1997) (internal quotations omitted) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

This is a negative value suit. *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 604 (W.D. Tex. 2006) ("A negative value suit is a case in which the costs of enforcement in an individual action would exceed the expected individual recovery.') (internal quotations and citation omitted). As indicated in the expert report of Dr. Haeder, damages on an individual putative class member basis based on calendar year 2021 would be on average $1,545.16.[41] In light of the complexity of the factual matters at issue here, it is infeasible for an individual class member to pursue individual litigation to recover their individual damages. Only a class proceeding can provide meaningful relief to class members in this context. To counsel's knowledge, no other cases exist outside of this proceeding to protect the class members, indicating that pursuing this matter on an individual basis is economically infeasible. Rule 23(b)(3).

Finally, the issues presented in this class litigation are manageable in light of the fact that Centene's records reflect the policyholders and the providers who are identified in Centene's

---

[41] This is supported by dividing the damages for 2021 by the average number of members. Pereira Decl. ¶7, Ex. A, Haeder Report at 60. As stated in the Angelo affidavits, the Ambetter monthly premiums paid by the Angelos was $679.30. *See* Pereira Dec. ¶10, Ex. D, Erin Angelo Affidavit at ¶3; Pereira Dec. ¶11, Ex. E, Nicholas Angelo Affidavit at ¶3 . Using the calculations in the Haeder Report (a 1% reduction in network size amounts to a 0.29% reduction in premium) results in yearly damages for the Angelos of $1,181.98.

network, and a single cause of action is at issue. Rule 23(b)(3)(D). A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Individualized litigation would create a potential for inconsistent or contradictory judgments and would massively increase the delay and expense to all parties and the court system. Simply put, absent certification, no practical method exists for the fair and efficient adjudication of this controversy. Denial of certification will effectively mean no opportunity for any recovery, and a serious alleged corporate wrongdoing will not be tested in court.

Furthermore, there are numerous methods to provide effective notice to class members. Rule 23(c)(2)(B). Each class member can be contacted directly by email and mail using addresses reflected on Centene's records. Also, publication may be used through a variety of means for class members who are no longer Centene customers. Further, because the issues raised by inaccuracy of health insurance networks have been publicized throughout the country, public notices in major Texas and national media outlets would be an effective means of providing notice. Plaintiffs' counsel will pay for the costs of notice. There will be no significant manageability problems if the case is certified for class action treatment.

## VI.   THE COURT SHOULD APPOINT WATTS GUERRA, LLP AND CERA LLP AS CLASS COUNSEL

The Court should appoint Watts Guerra LLP and Cera LLP as class counsel. Rule 23(g)(1). Plaintiffs have retained highly capable counsel with extensive experience in successfully prosecuting class actions throughout the United States. *See* Pereira Decl., ¶17, Ex. K (Cera LLP resume). Cera LLP has often been appointed class counsel in numerous major class action cases. *Id*. Cera LLP has been working cooperatively and effectively with Watts Guerra, LLP, which is also highly qualified and has been representing plaintiffs for more than twenty years and has an exemplary record of success. Pereira Decl., ¶18, Ex. L (Watts Guerra, LLP

resume). The firms have committed the resources needed to represent the proposed class, and will continue to do so. Proposed class counsel should be appointed under Rule 23(g).

## VII.   CONCLUSION

For the reasons stated above, plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel should be granted.

Dated: October 21, 2022

**WATTS GUERRA, LLP**

By: */s/ Francisco Guerra*
Francisco Guerra, IV.
State Bar No. 00796684
fguerra@wattsguerra.com
Four Dominion Drive
Bldg. 3, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501

**CERA LLP**

By: */s/ Solomon B. Cera*
Solomon B. Cera (admitted pro hac vice)
scera@cerallp.com
Thomas C. Bright (*pro hac vice* forthcoming)
tbright@cerallp.com
201 California Street, Suite 1240
San Francisco, California 94111
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

**ANDRES PEREIRA LAW FIRM, P.C.**
Andres C. Pereira
Texas Bar No. 00794440
apereira@andrespereirapc.com
14709 Custer Court
Austin, Texas 78734
Telephone: 512-920-2425
Facsimile 512-309-5861

– and –

**MARK RAVIS & ASSOCIATES**
Mark Ravis (admitted pro hac vice)
mravis99@gmail.com
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 295-4145

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below I electronically filed the forgoing document using the CM/ECF system, which will automatically send email notification of such filing to attorneys of record.

Dated:  October 21, 2022                              */s/ Solomon B. Cera*
                                                     Solomon B. Crea