**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ERIN ANGELO, NICHOLAS ANGELO, AND CYNTHIA WILSON, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 1:20-cv-00484-RP |
| v. | ) ) | |
| CENTENE MANAGEMENT COMPANY, LLC, CELTIC INSURANCE COMPANY, SUPERIOR HEALTHPLAN, INC., and CENTENE COMPANY OF TEXAS, L.P., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.  ARTICLE III STANDING EXISTS. ...............................................................2

    B.  PLAINTIFFS SATISFY THE PREDOMINANCE REQUIREMENT OF RULE 23(B)(3) ..........5

    C.  THIS CLASS ACTION IS THE SUPERIOR METHOD TO ADJUDICATE THIS DISPUTE. ........9

        1.  Defendants' Authorities re Superiority are Inapposite ............................9

        2.  Defendants' Dispute Resolution Process and TDI's Insurance Assistance Program are Not Adequate Substitutes for a Class Action Claim ...................................................................................11

        3.  TDI Lacks Authority to Redress Plaintiffs' Claims ..............................13

        4.  The Existence of a Negative Value Suit is a Compelling Rationale for Finding Superiority ..........................................................15

III. CONCLUSION .....................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands*,
478 F.2d 540 (3d Cir. 1973).................................................................................. 12

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................... 5, 7

*Basco v. Wal-Mart Stores, Inc.,*
216 F. Supp. 2d 592 (E.D. La. 2002).................................................................. 8

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003) ........................................................................... 8, 9

*Castano v. Am. Tobacco* Co.,
84 F.3d 734 n. 24 (5th Cir. 1996) .................................................................. 9, 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................................................................ 8

*Earl v. Boeing Company*,
53 F.4th 897 (5th Cir. 2022) ........................................................................... 2

*Erica P. John Fund, Inc. v. Halliburton Co.*,
718 F.3d 423 (5th Cir. 2013) ........................................................................... 5

*Forcellati v. Hyland's Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .................................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................ 11

*Harvey v. Centene Mgmt. Co.*,
Case No. 2:18-cv-00012-SMJ, 2020 WL 2411510 (E.D. Wash. 2020) ........................... 13

*In re Aqua Dots Prods. Liability Litig.*,
654 F.3d 748 (7th Cir. 2011) .......................................................................... 12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Lit.*,
293 F.R.D. 21 (D. Maine 2013)...................................................................... 12

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,*
214 F.R.D. 614 (W.D. Wash. 2003) .......................................................... 10, 11

*In re Scotts EZ Seed* Litigation,
304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................... 12

*In re TWL Corp.*,
712 F.3d 886 (5th Cir. 2013) .......................................................................... 11

*Kamm v. Cal. City Dev. Co.*,
 509 F.2d 205 (9th Cir. 1975) ............................................................................ 15

*Korolshteyn v. Costco Wholesale Corp.*,
 Case No. 3:15-cv-709-CAB-RBB, 2017 WL 1020391 (S.D. Cal. March 16, 2017) ....... 12

*Martin v. Monsanto Co.*,
 Case No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167 (C.D. Cal. March 24, 2017) 12

*Mims v. Stewart Title Guar. Co.*,
 590 F.3d 298 (5th Cir. 2009) ................................................................................ 5

*Robinson v. Tex. Auto. Dealers Assoc.*,
 387 F.3d 416 (5th Cir. 2004) ................................................................................ 5

*Steering Committee v. Exxon Mobil Corp.*,
 461 F.3d 598 (5th Cir. 2006) ................................................................................ 9

*Turner v. Murphy Oil USA, Inc.*,
 234 F.R.D. 597 (E.D. La. 2006) .......................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016 ............................................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2013) ............................................................................................ 7

*Webb v. Carter's Inc.*,
 272 F.R.D. 489 (C.D. Cal. 2011) ........................................................................ 11

**Statutes**

Tex. Ins. C. § 1702.057(e) .................................................................................... 14

**Other Authorities**

7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005) .. 7

**Rules**

Federal Rules of Civil Procedure

 Rule 23(b)(3)(D) ............................................................................................... 12

 Rule 23(b)(3) ............................................................................................. *passim*

 Rule 23(b)(3)(A) ............................................................................................... 12

 Rule 30(c)(2) ...................................................................................................... 4

## I.   INTRODUCTION

Defendants misapprehend Plaintiffs' case and incorrectly reframe it for the sole purpose of attempting to defeat class certification.  Plaintiffs' case is straightforward.  Defendants charged inflated premiums to class members who purchased their health insurance policies because the lists of providers represented to be available to the insureds were materially inaccurate.  They contained the names of thousands of providers who were not available to provide medical care to the policyholders.  Therefore, the class members/policyholders paid inflated premiums because they paid for access to providers who were not in fact available.  This case seeks to recover the overcharges paid by the policyholders.

A false representation by Superior that it promised a network with a ***particular number*** of providers is not the basis of Plaintiffs' case, as Defendants misleadingly contend.  **All** class members/policyholders paid for access to a network that was materially smaller than represented. A promise of any particular or specific number of providers is simply not at issue here.  As such, there are no individualized issues as to whether Superior breached its contract with particular insureds or as to resulting damages, which can be established based on a uniform calculation to be applied class-wide.  All class members/policyholders paid an inflated price, whether they saw the providers they wanted to or not.  Further, Plaintiffs' damages model is a price-inflation model, and is not dependent on whether an insured incurred an out-of-pocket charge as a result of an inaccurate provider search result.  Thus, there are no uninjured class members.  The requisite predominating legal and factual issues which are amenable to resolution on a class-wide basis clearly exist here.

A class action is also the superior method of resolving the class-wide price inflation issue.  Defendants have not established an alternative method to resolve the dispute as to the

1

amount of the overcharged premium based on the inaccuracy of the represented provide network size. And the Texas Department of Insurance cannot order a refund for inflated premiums paid because it has no rate-making authority over healthcare products such as the Ambetter policies at issue. In sum, there is no legal impediment to class certification.

## II.   ARGUMENT

### A.   ARTICLE III STANDING EXISTS.

Article III standing requires three elements: (1) an "injury in fact" that is (2) "fairly traceable" to the "conduct complained of" and that is (3) likely redressable by a favorable court decision. *Earl v. Boeing Company*, 53 F.4th 897, 901 (5th Cir. 2022). Here Plaintiffs meet the Article III standing requirement because they all paid an inflated premium for defendants' Ambetter health insurance policy and they can be made whole if this Court enters a judgment against defendants for the amount of premium inflation.

Defendants incorrectly claim that Plaintiffs argue "all Superior customers overpaid because Superior promised a network ***with a certain number of providers*** but delivered a network with fewer." Defendants' Opposition to Plaintiffs' Motion For Class Certification ("Opp.") at 8. This is wrong. Plaintiffs do ***not*** allege that Superior promised a ***particular number*** of providers in its network.[1] Rather, Plaintiffs' allegation is that the lists of providers represented to be in the Ambetter network and available to Superior's insureds, were materially inaccurate in that they contained thousands of names of providers who in fact were not available

---

[1] It should be noted that on the relevant Superior "Just the Facts" page, it represents" "Superior has more than 90,000 providers across all 254 Texas counties." *See,* https://www.superiorhealthplan.com/about-us/just-the-facts.html (last visited January 13, 2023). While Mr. Hoyt, defendants' expert, testified that this referred to Medicaid (Hoyt Dep. 181:7-12), he also testified that a regular Ambetter policy holder may very well not know that this representation was limited to Medicaid. *See* Hoyt Dep. 184:11-24. *See* Ex. A to the Declaration of Andres C. Pereira ("Pereira Dec.").

to provide medical care.  The essence of the case is that class members paid premiums based on

access to a robust network of providers, when in fact the network of providers available to treat

them was materially smaller than represented.  As explained by Plaintiffs' expert, Dr. Haeder,

this resulted in class members paying inflated premiums.[2]

Likewise, defendants' attack on the appropriateness of Dr. Haeder's class-wide damages

model fails as it is premised on a red herring.  Dr. Haeder's analysis does not address a promise

of a specific number of providers.  Opp. at 10.  It addresses **the effect on premiums** of a

misrepresented and overstated network of providers.  Additionally, defendants argue that Dr.

Haeder "confuses *correlation* with *causation*."  Opp. at 11 (emphasis in original).  Not so.  Dr.

Haeder's expert opinion that network size directly affects premiums is well-supported in the

academic literature. Indeed, Defendants' expert Mr. Hoyt has written that premiums for narrow

networks are lower than those for larger networks, precisely Plaintiffs' point.  *See* Exhibits B and

C to the Pereira Dec. (Hoyt papers of March 2015 and 2018); *see also* Pereira Dec. Ex. A at

140:17-20.  Additionally, Dr. Haeder addresses this criticism in his Rebuttal Expert Report of

Simon F. Haeder, PhD, MPA ("Haeder Rebuttal").[3]  The Haeder Rebuttal cites to eleven (11)

academic papers to support his conclusion that "the health services literature has established that

health plans with narrower networks are provided at lower premiums than those with broader

networks."  *See* Haeder Rebuttal at 45 fns. 196-206.  Dr. Haeder's updated research includes a

study from 2020 which found that there is a causal relationship between network breadth and

premiums.  Haeder Rebuttal at 48-49, fns.238-240.  Dr. Haeder's expert opinion is consistent

---

[2] Defendants disingenuously argue that reasonable insureds do not believe that a network of providers will be "static."  Again, this speculation is untethered to Plaintiffs' case. Plaintiffs contend that insureds are entitled to an accurate representation as to the network of available providers, which affects the premiums they pay.

[3] Attached as Ex. D to the Pereira Dec.

with the academic literature and Mr. Hoyt's own articles.  In the marketplace for health insurance, insureds pay higher premiums for a broader network.

Indeed, because insureds pay more for a broader network, **all** purchasers of the Ambetter policy in Texas paid an inflated price for a network in which 49% of the providers were not available to treat patients.[4]  Plaintiffs' injury is the price inflation in the premiums they paid, which occurred class-wide.  Therefore, Plaintiffs do not, as defendants wrongly contend, need to show that all class members had difficulty in using the provider database or even accessing health care.  Those are not issues in the case.  All class members paid inflated premiums based on the misrepresented network and were thereby injured.

Defendants suggest Dr. Haeder's error rate of 49% is incorrect because he "wrongly assum[ed] that providers who do not submit a health insurance claim under their individual NPI number during a calendar year are not 'actively' seeing customers."  Opp at 13.  This argument does not withstand scrutiny.  Mr. Hoyt tries to prop up this argument by stating that a number of providers identified by Dr. Haeder as not filing a claim in a given year were part of a group and that at least some members of the group billed under a group NPI instead of an individual NPI.  However, Mr. Hoyt admitted that he could not tell if other individual providers that belonged to the same group as Dr. Haeder identified as not filing a claim in a particular year, also billed only

---

[4] During his deposition, Mr. Hoyt, who is not a Ph.D., is not an expert in health care economics, and has no peer-reviewed publications, testified that he "[doesn't] disagree with Dr. Haeder's approach to use claims data to determine network status."  Pereira Dec. Ex. A at 100:6-17.  He abruptly changed his testimony only after counsel for Defendants improperly spoke on the record at the deposition in violation of Federal Rule 30(c)(2) and told his own expert, Mr. Hoyt, that his testimony contradicted his report.  By agreement of the parties, and because the deposition of Mr. Hoyt was taken only days before filing of this brief, the rough transcript is being submitted at this time.

4

under their group NPI number and not under their individual number.  *See* Hoyt Dep at 231: 1-10. Therefore, Mr. Hoyt's argument proves too much.

Finally, Defendants argue that "Superior makes its customers whole if they incurred out-of-pocket costs as a result of an inaccurate provider listing."  Opp at 13.  Yet, Mr. Hoyt admitted that the Ambetter policy states an insured *may,* not *shall* "be entitled to have an out-of-network claim paid at the in-network level of benefits."  Hoyt Dep. 239:15-240:9.  There is no evidence this occurred here.  In any event, this is of no moment because Plaintiffs' damages are based on inflated premiums and not out-of-network fees.

As acknowledged by the Fifth Circuit, "There is no serious question that the plaintiffs have standing to bring this claim. They have alleged an injury-in-fact (overpayment of premiums for [the Ambetter health insurance policy]), causation (defendants' overstated network size caused inflated premiums to be paid) and redressability (if successful, plaintiffs will be refunded the overpayment)."  *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 302 (5th Cir. 2009).  Defendants' argument that Plaintiffs have failed to establish Article III standing fails.

**B.    PLAINTIFFS SATISFY THE PREDOMINANCE REQUIREMENT OF RULE 23(B)(3)**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The question is not whether plaintiffs and class members will prevail, but rather "whether they will fail or succeed together." *Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 431 (5th Cir. 2013) vacated on other grounds, 573 U.S. 258 (2014). Predominance under Rule 23(b)(3) does not require **all** questions of law and fact to be common, but only that the common questions predominate over individual ones. *See Robinson v. Tex. Auto. Dealers Assoc.*, 387 F.3d 416, 421 (5th Cir. 2004).  That is clearly the case here and defendants'

authorities fail to rebut the existence of predominating common questions of law and fact in this case.

As explained in Plaintiffs' opening brief and below, the requisite predominance clearly exists here. Yet again defendants' arguments rest on a distortion of Plaintiffs' claims. Plaintiffs' case is not based on class members having difficulty with the provider search engine or with out-of-pocket costs, as Defendants erroneously contend. Rather, Plaintiff' case is that all members of the Class paid inflated premiums for the Ambetter insurance product based on common misrepresentations as to the size of the available pool of providers. These misrepresentations affected all Class members in precisely the same way. They all paid an inflated premium based on the purported existence of a network of providers that in fact did not exist as represented. As shown by Plaintiffs' expert, Dr. Haeder, the overcharge percentage can be measured using a common methodology applicable to all class members. There is nothing about the provider search engine or out-of-pocket costs that in any way undermines this fact, let alone has any relevance to it. As such, common legal and factual questions clearly predominate and class certification is appropriate here.[5]

In *Cruson*, the Fifth Circuit had no issue with Rule 23(b)(3) predominance relating to "the excessive charges themselves"; "We do not question the district court's conclusion regarding excessive charges. The record persuades us that those damages can be reckoned *by fairly straightforward math from Jackson's files*. The fact that this will require individualized calculations does not defeat predominance." *Id.* (emphasis added). That is precisely the

---

[5] Highlighting the weakness of Defendants' argument, the decision on which they rely, *Cruson v. Jackson Nat'l Life Ins. Co.,* 954 F.3d 240, 246 246 (5th Cir. 2020), which concerns annuity contracts, involved a situation where plaintiffs "virtually conceded" their damages model failed to support class treatment. Nothing remotely analogous is involved here.

situation here.  The "mathematical or formulaic" aspect of Plaintiffs' damages model, as explained in pertinent economic literature (Dkt. 62-2 at 2, 8, 57) satisfies Rule 23(b)(3).

Defendants' reliance on *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016) is similarly misplaced.  Defs. Br. at 14.  *Tyson Foods* counsels that a case is certifiable even where there are important issues that may require individual treatment:  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) *even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members*.' 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted)."  *Tyson Foods*, 577 U.S. at 453-454 (emphasis added).  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) similarly offers no succor to defendants.  There a single proposed settlement class composed of both those currently experiencing asbestos-related disease and those who might in the future develop asbestos-related injuries was found not to involve predominating common issues.  Again, the case bears no resemblance to the one at bar.

Defendants continue their predominance-related argument by citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2013).  There the Supreme Court observed that "[o]ther than the bare existence of delegated discretion, respondents have identified no "specific employment practice"—much less one that ties all their 1.5 million claims together."  *Id.* at 357.  Plaintiffs here base their complaint, and their expert bases his analysis, on the "common contention" that all Ambetter health insurance purchasers during the Class Period paid inflated premiums based on a materially inaccurate medical network directory.  This overriding common factual issue predominates in this case, and no such predominating common issue existed in the sprawling

*Wal-Mart* employment class action.  And *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) only requires that the plaintiffs' damage theory be consistent with their liability theory, which is precisely the case here.  Defendants' misrepresented directories resulted in inflated premiums being paid by all class members.

Defendants' parade of inapplicable authority continues with their reliance on *Basco v. Wal-Mart Stores, Inc.,* 216 F. Supp. 2d 592 (E.D. La. 2002).  Unlike *Basco,* where there were no written contracts at issue, this case involves formulaic written agreements referring to the same materially misrepresented list of purportedly available healthcare providers.  Moreover, the claims at issue here do not stem from individual experiences relating to contract formation, or breaches of hypothetical contracts (as described in *Basco*), but based on class members being provided a directory of Texas providers which was inaccurate in a uniform manner and which affected all class members similarly by causing a premium overcharge.  This clearly satisfies the predominance requirement.

The decision in *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) does not compel a different conclusion.  It certainly does not support the notion that individualized damages issues preclude certification in the context of this case.  In *Bell Atl.*, an antitrust class action, the Fifth Circuit acknowledged the rarity of defeating class certification based on individualized issues relating to damages.  However, the Fifth Circuit explained that "[c]lass treatment . . . may not be suitable where the calculation of damages is not susceptible to mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." *Id.* at 307.  The Court of Appeals then reverted to a discussion of the very significant differences between and among the class

8

members. *Id.* at 307-08. None of the individualized concerns identified in the appellate decision are present here.

As the qualifying event for establishing injury and damages in this case is the payment of inflated premiums, any "variegat[ion]" between and among members of the Class is inconsequential for purposes of standing, injury, predominance, and damages.[6] Moreover, Plaintiffs' expert has provided a "mathematical or formulaic" damages methodology. Predominating common questions of law and fact clearly exist in this case and Rule 23(b)(3) is satisfied.

C.     THIS CLASS ACTION IS THE SUPERIOR METHOD TO ADJUDICATE THIS DISPUTE.

1.     Defendants' Authorities re Superiority are Inapposite

Defendants rest their entire argument regarding a purported absence of superiority on the self-serving conclusion that its proffered alternative dispute resolution options via contractual remedy provisions and the Texas Department of Insurance ("TDI") health insurance assistance program provide "other available methods" for fairly and efficiently "adjudicating a controversy" for purposes of Rule 23(b)(3). The weakness of this argument is highlighted by the fact that  defendants do not cite any compelling legal authority to support their position aside from a single footnote in *Castano v. Am. Tobacco* Co., 84 F.3d 734, 747 n. 24 (5th Cir. 1996). Yet the context of that footnote, in a tobacco case, was concerned with disaggregation of claims and how that allows courts to dismiss weak and frivolous claims, particularly those that advance

---

[6] In contrast to the situation at bar, the Court in *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006), a personal injury class action, affirmed denial of certification because "[i]t [was] clear that from the record that the damages claims in this case are not subject to any sort of formulaic calculation."

9

novel theories of recovery (such as addiction as injury or failure to warn of risks of smoking). *Id.* No such complex individualized issues exist here.

*Castano* is inapposite. It was a mass tort action involving a novel theory of liability (i.e., an "immature tort" with no prior track record of trial decisions[7]) where class members from multiple states presenting difficult choice of law determinations and "*Erie* guesses," various subclasses, notice to millions of class members, and difficulty determining who was injured. *Id.* at 747. Plaintiffs' claims here do not present anything close to the degree of managerial complexities that prompted the Fifth Circuit to decertify in *Castano*.[8] There is nothing novel about Plaintiffs' theory of liability here (breach of contract), nor will this Court be required to consider multiple states' contract law or issues with subclasses. This is a Texas-based class only involving several thousand – not millions – of class members. There are no difficulties in determining who was injured because any person who purchased an Ambetter policy during the Class Period incurred damage in paying inflated premiums. It is not necessary for this Court to make any individualized inquiries into medical care.

Defendants cite two cases to support their argument that a class action fails the superiority requirement where a defendant offered a mechanism (e.g., recall campaigns and/or refund programs) by which putative class members could obtain relief. In *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,* 214 F.R.D. 614 (W.D. Wash. 2003), a Washington district court found that the superiority requirement was not met where defendants

---

[7] At the time of the *Castano* case, no court had tried a tobacco suit based on the "addiction as injury" theory of liability. *See Arch v. American Tobacco Co., Inc.*, 175 F.R.D. 469, 494-495 (E.D. Pa. 1997) (discussing *Castano*).

[8] *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (holding no abuse of discretion in certifying class where district court based its superiority finding on the *lack* of complex choice-of-law or *Erie* problems such as those presented in *Castano* and the existence of hundreds, as opposed to millions, of potential class members).

had removed the alleged defective pharmaceutical product from the market and had instituted a refund and replacement program prior to the class certification stage. *Id.* at 622. Similarly, in *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) a California district court found a class action was not superior when defendants had a widely publicized refund program providing refunds for defective garments and out-of-pocket medical costs that was instituted prior to the class action even commencing. *Id*. at 504. The harm plaintiffs suffered in *PPA* and *Webb* was specific, as were the programs that the defendants had *already* established, *prior to the class certification stage*. *PPA,* 214 F.R.D. at 622; *Webb*, 272 F.R.D. at 496. Defendants have offered nothing of the sort here.[9]

### 2. Defendants' Dispute Resolution Process and TDI's Insurance Assistance Program are Not Adequate Substitutes for a Class Action Claim

The Fifth Circuit has recognized that the superiority requirement under Rule 23(b)(3) "necessarily suggests a comparative process" between methods of **adjudication**. *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1012 (9th Cir. 1998). Defendants' argument concerning its dispute resolution process and the TDI insurance assistance program being superior to a class action misses the mark because neither are methods of *adjudication* for the Court to compare in making its superiority determination under Rule 23(b)(3).

---

[9] Defendants' expert Mr. Hoyt wrote in 2015 and 2018 that "consumers are finding that they exert greater influence over health plans by filing complaints with state regulators or *joining class actions against health insurers*." (Emphasis added). *See* Exhibits B and C to the Pereira Dec.; *see also* Ex. A thereto (Hoyt Dep. 160:6-17). Mr. Hoyt also admitted that he did not mention the possibility of calling and registering a complaint with the insurance company in his papers "[b]ecause I wasn't working on behalf of [defendant] at that point." *See also* Hoyt Dep. 160:6-18-161:4. Further supporting superiority, Mr. Hoyt admitted he only considered one source of possible complaints against defendants – provided to him by defendants themselves – suggesting that he substantially undercounted the actual number of pertinent complaints. Ex. A to the Pereira Dec. at 173:14-174:3.

While there does not appear to be any dispositive cases on point within the Fifth Circuit, the Seventh Circuit has held that a private, out-of-court refund program could not be considered a method of "adjudicating a controversy" under Rule 23(b)(3)'s superiority analysis. *In re Aqua Dots Prods. Liability Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (holding a refund program cannot be considered a form of "adjudication" under Rule 23(b)(3) and that the term "adjudication" "poses the question whether a single suit would handle the dispute better than multiple suits.").

Likewise, the Third Circuit has held in *Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands*, 478 F.2d 540 (3d Cir. 1973) that an administrative proceeding was an improper vehicle to compare with a class action for purposes of Rule 23(b)(3)'s superiority analysis: "The 'superiority requirement' was intended to refer to the preferability of adjudicating claims of multiple parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit[.]" *Id.* at 543 (emphasis added). Further, each of the considerations laid out in Rule 23(b)(3) reference either "litigation" or a "court action."  Rule 23(b)(3)(A)-(D).  Defendants' preferred modes of adjudication are neither.

Other district courts have held that non-judicial forms of redress were not a method of *adjudication* relevant to its superiority determination for purposes of Rule 23(b)(3). *See In re Scotts EZ Seed* Litigation, 304 F.R.D. 397, 415 (S.D.N.Y. 2015); *Martin v. Monsanto Co.*, Case No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167, at *9 (C.D. Cal. March 24, 2017); *Korolshteyn v. Costco Wholesale Corp.*, Case No. 3:15-cv-709-CAB-RBB, 2017 WL 1020391, at *8 (S.D. Cal. March 16, 2017); *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014)

Similarly, in *In re Hannaford Bros. Co. Customer Data Sec. Breach Lit*., 293 F.R.D. 21 (D. Maine 2013), the court held that a recall program was not even relevant to its superiority

12

determination. *Id.* at 34-35. The *Hannaford* Court rejected *PPA's* holding and reasoned: "Rule 23(b)(3) does not address superiority as a matter of abstract economic choice analysis, but asks if a class action is 'superior to other available methods for fairly and efficiently *adjudicating* the controversy' – i.e., other possible adjudication methods such as individual lawsuits or a consolidated lawsuit. Indeed all enumerated factors in this portion of the Rule deal with adjudication.") (emphasis in original). *Id.*

Here neither defendants' dispute resolution process nor the TDI insurance assistance program can be considered a method of "adjudicating a controversy" that precludes a finding of superiority.  The correct analysis here is whether a class action is superior to individually litigating each of the proposed class members' claims in separate actions, not whether some private dispute resolution process or purported administrative remedy is superior to a class action. *See Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 610 (E.D. La. 2006) (finding a private settlement program was irrelevant for its superiority analysis under Rule 23(b)(3): "the analysis is whether the class action format is superior to other methods of *adjudication*, not whether a class action is superior to an out-of-court, private settlement program.").  Obviously, resolving this dispute through a single class action case is far superior to any alternative dispute resolution process potentially involving thousands of separate proceedings.

### 3.     TDI Lacks Authority to Redress Plaintiffs' Claims

Defendants' argument that a class action is not superior to utilizing the TDI health insurance assistance program also fails for another reason—TDI does not have the authority to provide redress for Plaintiffs' claims. Defendants cite *Harvey v. Centene Mgmt. Co.*, Case No. 2:18-cv-00012-SMJ, 2020 WL 2411510 at *4 (E.D. Wash. 2020), where a Washington district court denied class certification for balance-billing claims as it concluded that there were superior alternatives to a class action to resolve plaintiffs' claims and because individualized

determinations rendered a class action impractical. *Id*. In *Harvey*, the State of Washington's Office of the Insurance Commissioner ("OIC") had brought an enforcement action against Centene based on consumer complaints concerning network inadequacies and balanced billing which resulted in a Consent Order where Centene admitted its network was inadequate and failed to provide members sufficient access to care and had agreed to follow a Compliance Plan approved by the OIC. *Id*. at *2. Notably, Washington law, unlike Texas, independently requires health insurance plans to provide certain benefits, an adequate network of providers, disclosure of limitations on their networks and to maintain up-to-date provider directories, and that an insured may obtain covered service at no greater cost than the insured would pay in-network. *Id*. at *1.

While the *Harvey* case and the instant matter initially present as tangentially similar, the *Harvey* case is easily distinguished. First, there is no Consent Order or Compliance Plan in place that applies to the facts of this case. Second, the OIC in *Harvey* had enforcement authority such that any findings in response to an insured's appeal to an Independent Review Organization, which was certified by the OIC, were binding. *Id*. at *3-4. In contrast, the Texas Insurance Code explicitly states that the authority granted to TDI to require rate filings "does not grant the commissioner the authority to determine, fix prescribe, or promulgate rates to be charged for an individual accident of health insurance policy. Tex. Ins. C. § 1702.057(e). By extension, the TDI likewise does not have the authority to require defendants to reimburse policyholders for inflated premiums. As the Magistrate Judge in this case concluded, TDI "lacks authority to approve or reject [insurance premium rates]." Dkt. 37 at 4. Finally, the *Harvey* court relied on Ninth Circuit authority that supported its conclusion that a class action was not superior, which provided that the court is not confined to considering judicial methods of resolving a dispute, but rather that it

14

could consider administrative and other non-judicial avenues for class members to obtain redress. *Id*. at *4 (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210-11 (9th Cir. 1975)). No such authority exists within the Fifth Circuit.

### 4. The Existence of a Negative Value Suit is a Compelling Rationale for Finding Superiority

The Fifth Circuit has established that "[t]he most compelling rationale for finding superiority in a class action – [is] the existence of a negative value suit." *Castano,* 84 F.3d at 896. This is a negative value suit as established by Dr. Haeder showing damages would be on average $1,545.16 for the 2021 calendar year. *See* Dkt. 62 at 18 n. 41. The costs of an individual action here would obviously far exceed the expected individual recovery. Tellingly, defendants fail to even address this argument. This is a negative value suit, the case does not involve a multi-state class action, and Plaintiffs' single breach of contract claim does not present legal or factual differences that unduly complicate the litigation. A class action is the superior method to proceed.

## III.    CONCLUSION

For the foregoing reasons, the Motion for Class Certification and Appointment of Class Representatives and Class Counsel should be granted.

Dated: January 30, 2023

**WATTS GUERRA, LLP**

By: */s/ Francisco Guerra*
Francisco Guerra, IV.
State Bar No. 00796684
fguerra@wattsguerra.com
Four Dominion Drive
Bldg. 3, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501

**CERA LLP**

By: */s/ Solomon B. Cera*
Solomon B. Cera (admitted pro hac vice)
scera@cerallp.com

15

Thomas C. Bright (*pro hac vice* forthcoming)
tbright@cerallp.com
201 California Street, Suite 1240
San Francisco, California 94111
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

**ANDRES PEREIRA LAW FIRM, P.C.**

By: */s/ Andres C. Pereira*
Andres C. Pereira
Texas Bar No. 00794440
apereira@andrespereirapc.com
14709 Custer Court
Austin, Texas 78734
Telephone: 512-920-2425
Facsimile 512-309-5861

– and –

**MARK RAVIS & ASSOCIATES**
Mark Ravis (admitted pro hac vice)
mravis99@gmail.com
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 295-4145

*Attorneys for Plaintiffs*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below I electronically filed the forgoing document using the CM/ECF system, which will automatically send email notification of such filing to attorneys of record.

Dated: January 30, 2023       */s/ Andres C. Pereira*
              Andres C. Pereira