**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ERIN ANGELO, et al. <br><br> Plaintiffs <br><br> v. <br><br> CENTENE MANAGEMENT COMPANY, LLC, CELTIC INSURANCE COMPANY, SUPERIOR HEALTH PLAN, INC., and CENTENE COMPANY OF TEXAS, L.P. Superior Community Health Plan, Inc. <br><br> Defendants | Case No. 1:20-CV-00484 |

I, Brian E. Hoyt, hereby testify and declare as follows:

1.      On December 5, 2022, I submitted an expert report in the above-captioned matter on behalf of Defendants (the "Hoyt Report"). As stated in the Hoyt Report, I reviewed the expert report submitted on September 30, 2022 by Plaintiffs' expert, Simon F. Haeder, PhD (the "Haeder Report") to ascertain whether the damages model proposed in that report was sound and supported by the facts.  I determined that the damages model proposed in the Haeder Report was fatally flawed and unreliable.  On December 30, 2022, Dr. Haeder submitted a rebuttal expert report (the "Haeder Rebuttal Report") in which he agreed with my analysis, "abandoned" his original damages model and adopted a new damages model.  Counsel for Defendants asked me to review the damages model proposed in the Haeder Rebuttal Report to ascertain whether it is sound and supported by the facts.

2.      **Dr. Haeder's Initial Report:**  In the Haeder Report from September 2022, Dr. Haeder opined that Superior's Ambetter customers received less than they paid for because Superior's Ambetter provider network "size" was smaller than Superior "represented."  Haeder Report at 8. In the Hoyt Report, I explained, among other things, that Dr. Haeder's damages model was nonsensical because (a) Superior does not make a representation to its customers

1

regarding its provider network "size," and (b) the literature upon which Dr. Haeder relied related to provider network "breadth," rather than network "size."

3. **Dr. Haeder's Rebuttal Report:**  In response to my analysis, Dr. Haeder "abandoned" the damages model that he proposed in the Haeder Report and in December 2022 proposed a wholly different damages model in the Haeder Rebuttal Report.  Haeder Dep. at 76:9–15 ("I diligently reviewed the comments that Mr. Hoyt had. I went back to the literature, did some more work, and found this article that I previously had not seen."). In his Rebuttal Report, Dr. Haeder changed his damages model to consider network "breadth" rather than network "size."  In doing so, he "abandoned" his previous methodology and the articles upon which it was based and developed a new methodology based on a different article to quantify damages.  *Id.* at 76:9–15 & at 119:21–23.

4. **Six Flaws in Dr. Haeder's Rebuttal Damages Model:**  Dr. Haeder's new damages model is at least as flawed as his previous model. The methodological flaws in his new damages model include:

   a. **No representation of network "breadth":**  Provider network "breadth" is defined generally as the number of providers in the network divided by the number of providers practicing in the area.[1] Superior's Ambetter provider network "breadth" is unknowable to customers, as neither Superior nor the Health Insurance Marketplace® ("HealthCare.gov") makes a representation to ACA customers regarding the "breadth" of its Ambetter provider network. It is obvious that customers cannot make pricing decisions based on information that they do not know or have. Although Dr. Haeder's damages model is now based on network "breadth," he admits he does not know Superior's network "breadth"; as a result, he had to "resort" to using widely divergent assumptions of network breadth ranging from 9% to 53%.  Haeder Rebuttal Report at 47–48.

---

[1] Eline M. van den Broek-Altenburg et al., *Patient Preferences for Provider Choice: A Discrete Choice Experiment*, 26 Am. J. Managed Care e219, e220 (July 2020) ("van den Broek-Altenburg").

b.  **Inapplicable theory:**  Although Dr. Haeder claims that his "assessment of damages" now considers provider network "breadth," he does not fix his flawed method of determining how many providers were in Superior's network (i.e., its "size"), which is the numerator component of the network "breadth" formula (i.e., network size / available providers in the area). Haeder Rebuttal Report at 47. Dr. Haeder purports to establish network "size" not by examining which providers are under contract with Superior's Ambetter ACA insurance product, but instead by examining claims data and deeming any provider as not "actually" in-network if they did not happen to bill a claim during a given calendar year.  The single article upon which Dr. Haeder relies for his new damages model makes no mention of his theory that providers should somehow be excluded from an analysis of network "breadth" simply because they did not bill a claim in a given year.  As a result, Dr. Haeder's attempt to compare his network "size" to the article's network "breadth" is meaningless and not supported by the article cited by Dr. Haeder.

c.  **Individual preferences & "averages":**  The article upon which Dr. Haeder relies for his new damages model recognizes that different customers have different medical needs and value provider network attributes – including network "breadth" – differently.  van den Broek-Altenburg at e222. Indeed, the article acknowledges that it is attempting to find "average" customer preferences. *Id.* Dr. Haeder admitted the same in his deposition, and he admitted that he did nothing to try to ascertain the individual potential class members' preferences or how they would value different sizes/breadths of provider networks.  Haeder Dep. at 45:11–46:2 ("everyone has different preferences").

d.  **Is not based on real-world alternatives:**  Dr. Haeder's new damages model is unrealistic because it does not resemble any choices that consumers would face in the real-world ACA market.  Customers in Texas buy ACA health insurance via http://www.HealthCare.gov, which makes available to customers certain information determined by the government to be relevant

to customers, but which does not include network "breadth" of any of the Texas ACA health insurance plans. Thus, it is not feasible for customers to determine network "breadth" on their own or to make purchasing decisions based on network "breadth." Note that Dr. Haeder's new damages model is so arcane that he does not "advocate" for the existence of the insurance product that he envisions. Haeder Dep. at 48:1–10 ("I don't think it's fair to say that I would advocate."). Nor does Dr. Haeder know of any health insurance companies that follow the approach in his Rebuttal Report. Haeder Dep. at 53:7–54:7 ("I -- not to my knowledge. I can't speak to that. . .. That's not part of the analysis I was asked to conduct, so I'm not speaking to that, and I'm not advocating anything."). Instead, Dr. Haeder described himself as simply creating a damages model. *Id.* at 70:22–71:5.

e. **Ignores relevant factors that exist in the real world:** As was the case in his previous damages model, Dr. Haeder's new damages model ignores the fact that Superior has a policy of making its customers whole if the customer sees an out-of-network provider based on an error in Superior's provider search engine. Superior's policy is a real-world factor that is relevant to whether customers truly would be damaged based on the allegations in the Complaint, but Dr. Haeder ignores it entirely, including what customers would be "willing to pay" for an insurance policy that handles out-of-network claims as Superior does.

f. **Ignores supply-side factors:** The article upon which Dr. Haeder relies seeks to quantify customers' average preferences for different network "breadths," and does so by offering survey respondents a conjoint analysis in which respondents are asked to choose among "synthetic plan alternatives." van den Broek-Altenburg at e220. According to the survey that Dr. Haeder relied upon, some respondents expressed a "willingness to pay" for additional network breadth in "hypothetical plan options." van den Broek-Altenburg at e219. An analysis of "willingness to pay" focuses only on a hypothetical average customer demand, which is not sufficient for estimating actual market prices. This is because what customers are *willing to pay* for a

4

product does not necessarily reflect what customers would *actually have to pay* in a market in which prices are set according to a supply and demand equilibrium.[2]

**Missing Supply-Side Factors**

5.      The following addresses the problem with Dr. Haeder's failure to include supply-side factors in his new damages model.

**A.      What Dr. Haeder was trying to measure: market price or market value for additional network "breadth."**

6.      The distinction between *willingness to pay* and *market price* or *market value* is important because Dr. Haeder's damages model relies on the existence of an alleged market price that customers should have paid for a provider network of a certain "breadth."

7.      Market price is generally determined by the interaction between supply and demand.[3] Dr. Haeder did not account for the supply-side factors that affect which health insurance products are available at what prices in an actual market (e.g., HealthCare.gov). One such factor is the marginal cost of offering additional network "breadth." For example, Dr. Haeder posits that consumers are willing to pay $2.41 more per month per each additional hypothetical percent of breadth. Haeder Rebuttal Report at 48–49. However, if the cost to the insurer of adding an additional percent of breadth is greater than $2.41, then it is unlikely the insurer would offer that product at that price.

8.      Without considering these supply-side factors, Dr. Haeder's new damages model cannot arrive at a meaningful market value of additional network breadth.

9.      Further, Dr. Haeder admitted at his deposition that he made no attempt to validate the demand-side findings in the article upon which he now relies. Haeder Dep. 22:18–23: 11 ("I

---

[2]  Mankiw, N. G., "The Market Forces of Supply and Demand," in Principles of Microeconomics, Mason, OH: South-Western Cengage Learning, 65–88,138–139 (2008).

[3]  Pindyck, R. S., and D. L. Rubenfeld (2009), Microeconomics, Essex, England: Pearson Education, Inc.,22–25 (2009) ("The supply curve shows the quantity of a good that producers are willing to sell at a given price … The demand curve shows how much of a good consumers are willing to buy as price per unit changes … The two curves intersect at the equilibrium, or market-clearing, price and quantity.").

can say no."). The result is a cursory effort at calculating demand-side willingness to pay, where neither ACA customers nor Dr. Haeder know the network "breadth" that Dr. Haeder's new damages model is attempting to value. Haeder Dep. at 26:1–28:25 (repeatedly states: "I cannot tell you the breadth.").

**B.      What Dr. Haeder actually measured: theoretical willingness to pay (i.e., <u>demand-only</u>) in a vacuum that ignores the actual market and actual market options (i.e., <u>ignored the supply-side</u> of the equation).**

10.      Dr. Haeder's new damages model—which is based solely on a single article that attempted to find an average consumer's willingness to pay for a hypothetical network "breadth" (i.e., customer demand)—is inadequate to calculate any actual market price or market value because it wholly ignores the supply-side factors that—in part—set market price.

11.      Additionally, academic findings show that demand-side willingness to pay surveys typically overstate actual willingness to pay and the resultant changes to market prices. For example, Allenby et al. (2013) finds that "[i]n general, the [willingness to pay] measure will overstate the change in equilibrium price."[4]

12.      As a result, Dr. Haeder's new damages model is irrelevant to calculating the damages that Plaintiffs seek in this case.

13.      In sum, Dr. Haeder's new damages model relies upon insurance products that do not actually exist in the marketplace (such as insurance options that are marketed based on their network "breadth"). Further, Dr. Haeder's new damages model mistakes academic theories for facts (including his presumption that *all* customers in Plaintiffs' proposed class were willing to pay more for Superior's ACA insurance because Superior made a misrepresentation regarding its network "breadth," and his notion that any provider that did not bill a claim in a given calendar is not "actually" in-network).

14.      This Q&A from Dr. Haeder's deposition is telling:

---

[4]  Allenby, G., J. Brazell, J. Howell, and P. Rossi, "Using Conjoint Analysis to Determine the Market Value of Product Features," Proceedings of the Sawtooth Software Conference, 341–355, 342 (2013) ("Allenby, et al. 2013").

Q:     Do you know of any health plan anywhere in the United States that deletes from its directory providers that did not bill a claim in the preceding months?

A:     I -- not to my knowledge. I can't speak to that.

Haeder Dep at 53:7–54:7.

Respectfully submitted,

_____

Brian E. Hoyt
February 27, 2023