**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ERIN ANGELO, NICHOLAS ANGELO, AND CYNTHIA WILSON, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:20-cv-00484-RP |
| v. | ) ) | |
| CENTENE MANAGEMENT COMPANY, LLC, CELTIC INSURANCE COMPANY, SUPERIOR HEALTHPLAN, INC., and CENTENE COMPANY OF TEXAS, L.P., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SURREPLY IN OPPOSITION TO CLASS CERTIFICATION**

Plaintiffs file this opposition to defendants' surreply, which mischaracterizes Dr. Haeder's rebuttal report as having abandoned his original methodology for calculating class-wide damages.[1]

Plaintiffs bring this class action against Defendants for publishing an inaccurate list of providers in the network for Defendants' Ambetter health insurance plan. Plaintiffs' expert, Dr. Haeder, measured the degree of inaccuracies, and calculated the total damages that resulted from those inaccuracies during the Class Period.[2] Dr. Haeder found Defendants published list of providers in their provider network was approximately 50% inaccurate. Because the academic literature that Dr. Haeder properly relied on to calculate class-wide damages for network inaccuracies took into account network breadth, Defendants argued to reject Dr. Haeder's model because it failed to account for network breadth.[3] In response to this criticism, and in accordance with peer-reviewed academic literature, Dr. Haeder made a very simple mathematical calculation to adjust his model to account for network breadth. Dr. Haeder's methodology was otherwise entirely unchanged. Moreover, the highest total damages estimation remained relatively the same. Dr. Haeder did not abandoned his original methodology. Therefore, it is false and disingenuous to assert that Dr. Haeder abandoned his original damages model.

Defendants' premise their surreply on their claim that Dr. Haeder's methodology is

---

[1] Plaintiffs incorporate their opposition to Defendants' Daubert motion (which is due March 31, 2023) in this opposition to Defendants' surreply.

[2] Dr. Haeder's methodology consists of two components. The first component, using claims data, measures the inaccuracies of Defendants' network. This was unchanged in his rebuttal report. The second, which is the component Dr. Haeder adjusted, measures the damages that resulted from the measured inaccuracies.

[3] Network breadth simply refers to the percentage of providers listed in the published provider directory divided by the total number of providers in the area.

irrelevant and unreliable and therefore the Court should reject it. However, the peer-reviewed academic literature does not support Defendants' arguments and Defendants misread Dr. Haeder's rebuttal report. Additionally, Defendants criticisms of Dr. Haeder's damages model are unfounded for the following reasons[4]:

- **It is *irrelevant* that Defendants make no promise of network breadth**. The issue is not whether Defendants made a representation that the overall network was of a certain size or breadth. The issue is that Defendants are offering an insurance product with a provider directory that is not as robust as Defendants represent it to be. Dr. Haeder's model is ***not*** inconsistent with its theory of liability, as Defendants argue. "Defendants may disagree with the methodology or feel that another methodology is correct, but that does not make this methodology inconsistent with [Plaintiffs'] theory of liability. Thus, any challenges Defendants have to this methodology are not proper at the class certification stage." *Marcus v. J.C. Penney Company, Inc.*, No. 6:13-cv-736, 2016 WL 8604331, at *10 (E.D.Tex., 2016).

- **Dr. Haeder *does* measure the damages from an inaccurate directory.** Dr. Haeder's damages model measures damages that result from an inaccurate directory in a manner endorsed by peer-reviewed academic literature.

- **Dr. Haeder' analysis of the inaccuracy of Defendants' network *is* consistent with governing law.** Defendants erroneously claim that the law obligates Defendants to list in their network all providers that are under contract. It is not Defendants' legal obligation to list every provider with whom is has contracted. A review of the statutes cited by Defendants clearly demonstrates this. *See* Exhibits A-C (attached for convenience of the court and not as an end around the page limit). These statutes and regulations merely list all

---

[4] These responses to Defendants' criticisms follow the order that appear in Defendants' surreply.

provider details required to be in the directory.  They do ***not*** require a plan to list all contracted providers.

- **Dr. Haeder's model makes *conservative* estimates of network breadth.**  Dr. Haeder employed a conservative range (see rebuttal report (Dkt. 66-6 filed under seal)) as to Centene's network breadth so that the range at the high end is that of the average plan sold in the United States to assuming its network is a significant outlier in its narrowness.  Dr. Haeder can easily adjust these assumptions if the Defendants provide network breadth data.

    - **Dr. Haeder based his model of consumer willingness to pay more for broader networks and accounts for supply-side factors**.  The results from the conjoint analysis conducted by van den Broek-Altenburg and Atherly are further substantiated by Drake.[5] Drake conducted an analogous analysis of real-world consumer choices, based on real-world demand and supply, in the California ACA Marketplace and found that "[m]ean willingness to pay for a broad network plan relative to a narrow network plan, defined as a […] 17.44 percentage point increase in network breadth, is \$45.83 [or \$2.63 per percentage point increase] in post-subsidy monthly premiums."  Drake, C. (2019). *What Are Consumers Willing to Pay for a Broad Network Health Plan?: Evidence from Covered California. Journal of Health Economics*, 65, 63-77.  Most importantly, the relevant issue at the class certification stage is whether "damages are ***capable*** of measurement on a class-wide basis.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (emphasis added).  If "the calculation of damages for each class member is susceptible to a mathematical or formulaic calculation" based on common proof, this supports a finding that common issues predominate.  *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711 (5th Cir. 2020) (internal citations omitted).

---

[5] Dr. Hader's rebuttal report cites to both studies.

Dated: March 16, 2023

**WATTS GUERRA, LLP**

By: */s/ Francisco Guerra*
Francisco Guerra, IV.
State Bar No. 00796684
fguerra@wattsguerra.com
Four Dominion Drive
Bldg. 3, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501

**CERA LLP**

By: */s/ Solomon B. Cera*
Solomon B. Cera (admitted pro hac vice)
scera@cerallp.com
201 California Street, Suite 1240
San Francisco, California 94111
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

**ANDRES PEREIRA LAW FIRM, P.C.**

By: */s/ Andres C. Pereira*
Andres C. Pereira
Texas Bar No. 00794440
apereira@andrespereirapc.com
14709 Custer Court
Austin, Texas 78734
Telephone: 512-920-2425
Facsimile 512-309-5861

– and –

**LAW OFFICE OF MARK RAVIS & ASSOCIATES**
Mark Ravis (admitted pro hac vice)
mravis99@gmail.com
26565 West Agoura Road, Suite 200
Calabasas, CA 91302
Telephone: (310) 295-4145

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the forgoing document using the CM/ECF system, which will automatically send email notification of such filing to attorneys of record.

March 16, 2023.

By: ___*/s/ Francisco Guerra*___